Carr, J.
The defendant’s charter empowered it to manufacture all kinds of merchandise, to enter into all obligations to that end, and to do all acts necessary for the purpose of its business.
Henry Gr. Cohen was its president. He was one of the persons “who were the general manager of and in charge of the ordinary business of the defendant”. He had power to call meetings and to exercise the usual powers of the president of a corporation, — to sell clothing, manage the factory, and to negotiate terms with the labor union.
There was also evidence that when the plaintiff first came to the defendant’s place of business, Cohen was continually disturbed by people asking what to do and he would answer with an air of authority. The instructions were generally concerned with the management of the *328 general affairs of the company. There was also evidence that for some years he had acted like the “boss” of the defendant corporation; that he had signed checks and legal documents and purchased machinery for the factory of the defendant corporation, and that his actions had not changed up to the time "of the trial.
In June, 1937, in response to a telephone call, plaintiff went to the defendant’s office. He then realized that the company was engaged in the business of manufacturing and selling men’s clothing. Henry Gr. Cohen was called and after a short time they went to Cohen’s private office where they were joined by Cushner and Seltzer. Cohen showed plaintiff a box of cotton wads three inches long and about three-fourths of an inch in diameter. He told plaintiff that they were having trouble getting the wads into the proper shape, and that the edges were not coming out right. They told the plaintiff that Cushner had been unable to furnish the machine which they desired and had recommended the plaintiff to Cohen. The plaintiff made no inquiry as to the purpose of the machine, did not know the purpose, and there was- a general air of mystery about what it was for. The word hygienic having been mentioned, plaintiff suggested the use of a non-poisonous metal in place of brass with which Cohen and Seltzer had been experimenting. Asked to estimate the cost of the machine, plaintiff said he could not as it was experimental work. On plaintiff’s asking who would pay for this, Cohen replied, — “The Malcolm Kenneth Company. Do a good job and I’ll give you a suit of clothes”. Plaintiff worked on the machine. Cohen said he could use live steam in defendant’s factory for experimenting. Plaintiff made tests and Cohen said he was on the right track and that haste was essential.
*329 In fact, the desired machine was for the purpose of manufacturing internal sanitary napkins for women and the plaintiff’s services were worth $492.78.
The sole question on this appeal is one of agency. Did the acts of Cohen bind the defendant to pay the plaintiff for the services rendered?
The defendant contends that because, at the time the plaintiff was hired, the defendant was engaged in manufacturing and selling men’s clothing, Cohen had no authority to employ the plaintiff in behalf of the defendant to perfect a machine for the manufacture of internal sanitary napkins for women.
In our opinion, this is too narrow a view to take of the powers of an agent.
It would be drawing a very fine line to hold that one who had authority to manufacture and sell men’s clothing could not manufacture and sell women’s wear. In these days, except as to quantity, there is often very little difference between the articles worn by the sexes. Nor is it a long step from a garment to a napkin which makes the wearing of the garment possible.
A person dealing with an agent is not bound to show specific authority for each step taken by the agent. A delegation of authority to do an act may carry with it many incidental powers. It is not far fetched to say that the manufacture of sanitary napkins is an incident of the business of manufacturing and selling clothing. Mecham Agency, §721.
Be that as it may, it is a principle too well established to need extensive citation that “an agent’s ostensible powers are his real powers”. Brooks v. Shaw, 197 Mass. 376, 380.
Not only is this so but “limitations as between the principal and agent of an apparently general authority *330 not brought to the knowledge of third persons do not affect the rights of the latter.” Danforth v. Chandler, 237 Mass. 518, 522.
If a principal puts his agent in a position to deal with third persons and allows him to act in such a way that a reasonable person dealing with him would be justified in thinking he has power to do the act on which such person relies, that ordinarily is enough to bind the principal.
Stated narrowly, we have here a situation where at the time the plaintiff went to the defendant, he found Cohen, the defendant’s president, who was in charge of the business of manufacturing and selling men’s clothing. Cohen acted as one with authority. His conduct is more fully set forth above. Cohen had a box of cotton wads and discussed the perfecting of a machine in which they were to be used. A reasonable person might well have supposed that the wads and the machine were to be used in the development of the men’s clothing business and that Cohen was going to produce something for the business as then carried on. Cotton wads might be turned to some such use as padding a coat to disguise defects in customers’ anatomy. The “air of mystery” did not make such a view unreasonable; it might have suggested an intention to protect a secret process or new device pending application for patent.
The agency, however, could be found to be broader than that. Cohen was president of the corporation, a person in general management of the business, the ostensible “boss” of the corporation. As stated in the case of Gibson v. Contract Water Proofing Co., 277 Mass. 455, 458.
“In the absence of notice of limitation upon the authority of a general manager, he may be assumed to have general charge and direction and control of the corporation in carrying out the purposes for which it was incorporated”.
*331 It is agreed that the undertaking for which the plaintiff was employed was within the purposes of the corporation which have already been set forth.
The powers of a general manager, it is true, are not unlimited. DeBlois v. Boylston & Tremont Corp., 281 Mass. 498, 520.
There are some acts of such magnitude or so out of step with the business of the corporation as to be outside the power of the manager. Stoneman v. Fox Film Corp., 1936 A. S. 1851; James F. Monaghan, Inc. v. Lowenstein & Sons, 290 Mass. 331.
In the Monaghan, Inc. Case, p. 333, it was held that “the burden was on the plaintiff to show, not only that the contract alleged was within the corporate powers of the defendant, but also that it was either made or ratified by an officer or officers having authority to bind the corporation”. Nothing further is said of the powers of the corporation. Nothing is said of what the trial judge could infer or find on the evidence, but the opinion infers that the defendant owned no finishing plant and finds that “planning a new finishing plant, to cost several million dollars, was no part of its regular business”. We think this fiat distinguishes the case from the one before us.
In the Stoneman Case, the evidence showed, p. 1853, that “it (the certificate of incorporation of the defendant) contains no mention of buying, selling, owning or leasing theatres and theatre properties”. On p. 1855 the opinion states: “From the testimony of the plaintiff it appears that the transactions in which he was engaged if carried out would involve in rentals, covering a period of years, several million dollars.” i. e. it was for procuring leases of theatres that the plaintiff sued. We think this distinguishes the case from the one before us.
There was nothing in the dealings of Cohen with the plaintiff out of step with the general business of the de *332 fendant, of such magnitude as to challenge the authority of the agent, or beyond the purposes of the corporation.
It is unnecessary to consider the plaintiff’s objection to the defendant’s right to a report. There is no authority for the proposition he sets forth. Though it seems to us a technicality without merit, we do not pass upon it. If not properly before us the report should be discharged. Assuming for the purpose of passing on the merits of the question that the report is properly before us, as we believe it is, we order—
Report dismissed.